IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

KHIREY LEWIS                          :

                                          :

   v.                                 :   Civil Action No. DKC 25-1015

                                          :

DIDLAKE, INC.                         :

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this case brought pursuant to the Americans with Disabilities Act ("ADA") is the motion to dismiss filed by Defendant Didlake, Inc. ("Didlake"). (ECF No. 8). The issues have been briefed, and the court now rules, no hearing being deemed necessary. Local Rule 105.6. For the following reasons, the motion to dismiss will be granted.

**I.   Background**

*Pro se* Plaintiff Khirey Lewis ("Mr. Lewis") has an intellectual disability, (ECF No. 3-1, at 19), and "was employed at Didlake Inc. for six years, receiving job coaching through the DORS Program, The Arc Program, and The Resource Connection."[1] (*Id.*

---

[1] These three programs are not further defined in the complaint. Defendant explained, in its motion, that "Didlake is a non-profit corporation with a mission to create and promote opportunities that enrich the lives of people with disabilities. To fulfill its mission, Didlake provides employment opportunities to individuals with disabilities through programs including the Maryland State Department of Education Division of Rehabilitation Services (DORS), The Arc, and the Resource Connection." (ECF No. 8-1, at 2) (footnotes omitted).

at 3). During his employment, he alleges "continuous harassment from coworkers, which was repeatedly reported to HR without resolution." (*Id.*). According to a letter from Didlake attached to Mr. Lewis' complaint, a November 2023 meeting with Mr. Lewis, Human Resources ("HR"), and Mr. Lewis' "job coach" was meant to "provide support on ways to manage [Mr. Lewis'] anger after allegations of threatening behavior towards [his] supervisor." (*Id.* at 5). In February 2024, Mr. Lewis was terminated after "responding to workplace bullying," (*Id.* at 3); when two fellow employees called him "weird" and "mock[ed] his disability," Mr. Lewis "told them to leave him alone or he would defend himself." (*Id.*). The termination letter attached to his complaint provides additional detail. (*Id.* at 5-6). The letter alleges that when the two employees boarded the elevator Mr. Lewis was on, "one of them rolled their eyes and the other breathed heavily." (*Id.* at 5). Mr. Lewis responded by saying "Leave me alone before I swing." (*Id.*). The other employees reported his response, "leading to his termination." (*Id.* at 3). Mr. Lewis was terminated effective March 1, 2024, because he had "failed to meet the expectations established in Policy 1020–Standards of Conduct for Employees and Policy 1025–Workplace Violence." (*Id.* at 5).

Mr. Lewis alleges emotional distress, depression, and financial trouble following his termination. (*Id.* at 3). He also

2

alleges that support services failed to "guide[] him on how to file for unemployment or appeal his termination." (*Id.*). Additionally, an individual "hired through the DORS program[] refused to continue services unless [he] reapplied, further complicating the situation." (*Id.*). Following his termination, the Equal Employment Opportunity Commission ("EEOC") investigated his claims and provided Mr. Lewis with a right to sue letter. (*Id.* at 3, 9).

Mr. Lewis filed a complaint in the District Court of Maryland for Prince George's County on February 19, 2025. (*Id.* at 2). Didlake removed the case to this court on March 27, 2025, asserting that this court has original jurisdiction pursuant to 28 U.S.C. § 1331 because Plaintiff asserts a claim which arises under federal law, specifically the ADA, 42 U.S.C. §§ 12101-12213 (ECF No. 1, at 1-2). Didlake filed a motion to dismiss for failure to state a claim on April 3, 2025. (ECF No. 8). Mr. Lewis filed two responses to the motion to dismiss on May 22, 2025. (ECF Nos. 29, 30). Didlake filed a reply on June 17, 2025. (ECF No. 31). On June 27, 2025, Mr. Lewis filed a "Motion for Extension of Time, Notice of Filing Issues, and Request for Accommodation due to Disability and Hardship." (ECF No. 32). On July 15, 2025, the court granted the motion for extension of time, ordering that Mr. Lewis would have until August 12, 2025, to supplement his response to the

3

motion to dismiss. (ECF No. 35, at 3). On August 12, 2025, Mr. Lewis filed a document which the court construed as an additional motion for extension of time. (ECF No. 36). Didlake filed a response in opposition to the motion for extension of time on August 21, 2025. (ECF No. 37). The court granted a "final twenty-eight (28) day extension to supplement any response to the pending motion to dismiss." (ECF No. 38, at 1). Mr. Lewis filed a final supplemental response to the motion to dismiss on September 17, 2025, (ECF No. 39), which contains a request that the court, in the alternative, allow him to amend his complaint, (*Id*. at 4). Didlake filed a final reply to the response on October 1, 2025, (ECF No. 40).

## II. Standard of Review

A motion to dismiss under Fed.R.Civ.P. 12(b)(6) tests the sufficiency of the complaint. *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006). The court "must accept the complaint's factual allegations as true and construe the facts in the light most favorable to the plaintiff." *Barnett v. Inova Health Care Servs.*, 125 F.4th 465, 469 (4th Cir. 2025) (citing *Barbour v. Garland*, 105 F.4th 579, 589 (4th Cir. 2024)). A plaintiff's complaint must only satisfy the standard of Fed.R.Civ.P. 8(a)(2), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief."

4

"[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (quoting Fed.R.Civ.P. 8(a)(2)).  A Rule 8(a)(2) "showing" requires "stat[ing] a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that defendant is liable for the misconduct alleged." *Mays v. Sprinkle*, 992 F.3d 295, 299–300 (4th Cir. 2021) (quoting *Iqbal*, 556 U.S. at 678). When ruling on a motion to dismiss, "courts may consider the complaint itself and any documents that are attached to it." *CACI Int'l, Inc. v. St. Paul Fire & Marine Ins. Co.*, 566 F.3d 150, 154 (4th Cir. 2009).

Plaintiff in this case is *pro se*.[2]  Courts hold *pro se* pleadings to "less stringent standards than formal pleadings

---

[2] Mr. Lewis is listed as a *pro se* plaintiff on the docket. The complaint, initially filed in state court on a preprinted form, is not entirely legible but appears to contain his signature. Later filed documents also contain somewhat illegible signatures although some appear to have been signed by two different people, both Plaintiff and his mother.  (ECF Nos. 3-1, at 16; 39 at 5). The complaint states, however, that his mother prepared it on his behalf.  (ECF No. 3-1, at 3 ("I, Alicia Nathan[], POA and advocate for my son, [Khirey Lewis], am filing this complaint against Didlake Inc. for wrongful termination, discrimination based on disability, and failure to accommodate under the Americans with

drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). The court has an obligation to construe pleadings of self-represented litigants liberally. *Id.* It is not necessary, however, to "conjure up questions never squarely presented," or to recognize "obscure or extravagant claims defying the most concerted efforts to unravel them." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1277-78 (4th Cir. 1985).

Fed.R.Civ.P. 15 governs motions for leave to amend a complaint. After the time has elapsed for a party to amend as a matter of right, *see* Fed.R.Civ.P. 15(a)(1), parties may only amend their complaint with the written consent of the opposing party or the court's leave. Fed.R.Civ.P. 15(a)(2) provides that courts "should freely give leave when justice so requires." "Denial of leave to amend should occur 'only when the amendment would be prejudicial to the opposing party, there has been bad faith on the

---

Disabilities Act (ADA)."). While non-attorneys may represent *themselves pro se* in federal court, "a person ordinarily may not appear *pro se* in the cause of another person." *Witherspoon v. Jeffords Agency, Inc.*, 88 F.App'x 659, 2004 WL 370230, at *1 (4th Cir. 2004) (quoting *Pridgen v. Andresen*, 113 F.3d 391, 393 (2d Cir. 1997)). *See also Wojcicki v. SCANA/SCE&G*, 947 F.3d 240, 244 (4th Cir. 2020). A notarized power of attorney document is attached to the complaint, (ECF No. 3-1, at 16), but "[a] non-attorney may not appear as counsel in this Court even if granted power-of-attorney authority by an unrepresented party." *Miller v. Butler*, No. 18-cv-3102-GJH, 2019 WL 2410937, at *1 n.1 (D.Md. June 7, 2019) (citing Local Rule 101.1.a).

part of the moving party, or the amendment would be futile.'" *Jarallah v. Thompson*, 123 F.Supp.3d 719, 728 (D.Md. 2015) (quoting *Johnson v. Oroweat Foods Co.*, 785 F.2d 503, 509 (4th Cir. 1986)). An amendment is futile if it is clearly insufficient or frivolous on its face and would not survive a motion to dismiss. *See Tawwaab v. Va. Linen Serv., Inc.*, 729 F.Supp.2d 757, 769 (D.Md. 2010).

### III. Analysis

Under the heading "Legal Claims," the complaint lists five asserted causes of action: "Violation of the Americans with Disabilities Act (ADA)," "Workplace Discrimination," "Wrongful Termination," "Failure to Provide Reasonable Accommodations," and "Emotional Distress." (ECF No. 3-1, at 3-4). Reading the *pro se* complaint's claims liberally, Plaintiff appears to be making three claims under the ADA: discrimination based on a failure to accommodate, hostile work environment, and wrongful termination. It is unclear if "Emotional Distress" is meant to indicate a state law claim for intentional infliction of emotional distress or if it is solely meant as a possible measure of damages. The court will consider it as a tort claim. Finally, Plaintiff's supplementary response to the Defendant's motion to dismiss requests leave to amend the complaint in the alternative.

### A. ADA Claims

Plaintiff brings three claims under the ADA: failure to accommodate his disability, hostile work environment, and wrongful termination. Even with the leeway provided to *pro se* pleadings, Plaintiff has not stated "a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.

### 1. Failure to Accommodate

A court in this district previously outlined the analysis for an ADA claim based on a failure to accommodate:

> [T]o establish a *prima facie* case of discrimination based on a failure to accommodate under the ADA . . . a plaintiff must demonstrate that: (1) the plaintiff was an individual who had a disability within the meaning of the statute; (2) the employer had notice of the disability; (3) with a reasonable accommodation the plaintiff could perform the essential functions of the position sought; and (4) the employer refused to make such an accommodation.

*Gagnon v. Bd. of Educ.*, 760 F.Supp.3d 359, 371 (D.Md. 2024) (citing *Wilson v. Dollar General Corp.*, 717 F.3d 337, 345 (4th Cir. 2013). Didlake does not dispute that Mr. Lewis has a disability, and that it was aware of his disability. Didlake argues, however, that Mr. Lewis has not pleaded facts sufficient to support the final two prongs: that the employee could perform "the essential functions of the position sought" with a reasonable accommodation, and that the employer refused to provide a reasonable accommodation.

8

Plaintiff has failed to allege any facts that could support a claim on this ground.  Reviewing Plaintiff's complaint, the only possible allegation that Didlake failed to accommodate Plaintiff is that "no one properly guided him on how to file for unemployment or appeal his termination," (ECF No. 3-1, at 3), and an individual "hired through the DORS program, refused to continue services unless [he] reapplied," (*Id*.).  "Under the ADA, '[r]easonable accommodations' are 'modifications or adjustments to the work environment, or to the manner or circumstances under which the position held is desired or customarily performed, that enable an individual with a disability who is qualified to perform the essential functions of that position.'"  *Gagnon*, 760 F.Supp.3d at 371 (quoting 29 C.F.R. § 1630.2(o)(ii)).  Plaintiff's requested "accommodations" are all from after he was terminated; he makes no allegation that Didlake failed to make changes to his work environment or position to make it possible for him to do his job.  An employer is under no obligation to make reasonable accommodations for a former employee.  A reasonable accommodation is a modification or adjustment to the "job application process," "work environment, or to the manner or circumstances under which the position held or desired is customarily performed," or that enables a disabled employee "to enjoy equal benefits and privileges of employment" as employees who are not disabled.  29 C.F.R. §

9

1630.2(o)(1); *see also EEOC v. Mfrs. & Traders Tr. Co.*, 429 F.Supp.3d 89, 103 (D.Md. 2019) (describing possible reasonable accommodations including changes to the work environment or paid or unpaid leave). Mr. Lewis has failed to state a claim for a lack of reasonable accommodation under the ADA.

### 2. Hostile Work Environment

Mr. Lewis next alleges that he was subject to a hostile work environment due to "continuous harassment from coworkers, which was repeatedly reported to HR without resolution." (ECF No. 3-1, at 3). The *Gagnon* court also described the elements of a hostile work environment claim:

> The elements of an ADA hostile work environment claim derive from the standards applicable to a Title VII hostile work environment claim. *See Fox v. Gen. Motors Corp.*, 247 F.3d 169, 177 (4th Cir. 2001). "A hostile [work] environment exists '[w]hen the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 277 (4th Cir. 2015) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21[] (1993)). To establish a claim of a hostile work environment based on disability, a plaintiff must show that: (1) the plaintiff was a qualified individual with a disability; (2) the plaintiff was subjected to unwelcome harassment; (3) the harassment was based on the disability; (4) the harassment was "sufficiently severe or pervasive to alter a term, condition, or privilege of employment"; and (5) there was a factual basis to impute

10

>     liability for the harassment to the
>     plaintiff's employer. *Fox*, 247 F.3d at 177.

*Gagnon*, 760 F.Supp.3d at 374.

Plaintiff has failed to allege facts that the harassment was "sufficiently severe or pervasive to alter a term, condition, or privilege of employment," or that there was any basis to "impute liability for the harassment" to Didlake. *Id*. First, Mr. Lewis' conclusory allegation of "continuous harassment" is only supported with facts about a single instance of harassment from coworkers. This sort of occasion does not rise to the high bar of severe or pervasive harassment.  "[A]lthough some workplace conduct may be deeply unpleasant, complaints premised on nothing more than 'rude treatment by coworkers . . . callous behavior by one's superiors . . . or a routine difference of opinion and personality conflict with one's supervisor . . . are not actionable.'"  *Anderson v. Sch. Bd.*, No. 18-cv-745-MHL, 2020 WL 2832475, at *23 (E.D.Va. May 29, 2020) (quoting *EEOC v. Sunbelt Rentals, Inc.*, 521 F.3d 306, 315-316 (4th Cir. 2008)).

Additionally, Mr. Lewis has not pleaded facts showing that the harassment by coworkers could be imputed to Didlake.  To impute liability to the employer, a plaintiff must show that the employer "knew or should have known about the harassment and failed to take effective action to stop it." *Sunbelt Rentals, Inc.*, 521 F.3d at 319 (quoting *Howard v. Winter*, 446 F.3d 559, 565 (4th Cir. 2006)).

11

Within his complaint, Mr. Lewis says that his termination notice attached to his complaint constitutes "[d]ocumentation of prior complaints to HR." (ECF No. 3-1, at 4). The only reference to HR in the termination letter says "[i]n November 2023, Human Resources along with your job coach met with you to provide support on ways to manage your anger after allegations of threatening behavior towards your supervisor." (*Id*. at 5). Mr. Lewis has not pleaded facts showing that Didlake was aware of "continuous harassment" directed toward Mr. Lewis; rather, the only specific HR meeting alleged related to Mr. Lewis' actions toward other coworkers. Mr. Lewis has not pleaded sufficient facts to support a claim of a hostile work environment under the ADA.

    **3.**    **Wrongful Termination**

Finally, Mr. Lewis alleges that he was wrongfully terminated "after responding to workplace bullying." (ECF No. 3-1, at 3). Another court in this district previously described the test for wrongful termination, or discharge, under the ADA:

> The elements of a wrongful discharge claim under the ADA are "(1) [the plaintiff] was a 'qualified individual with a disability'; (2) she was discharged; (3) she was fulfilling her employer's legitimate expectations at the time of discharge; and (4) the circumstances of her discharge raise a reasonable inference of unlawful discrimination." *Rohan v. Networks Presentations LLC*, 375 F.3d 266, 273 n.9 (4th Cir. 2004) (quoting *Haulbrook v. Michelin N.*

12

>   *Am., Inc.*, 252 F.3d 696, 702 (4th Cir. 2001))[.]

*Wilson v. Montgomery Cnty. Bd. of Trs.*, No. 17-cv-2784-PWG, 2018 WL 4300498, at *6 (D.Md. Sep. 10, 2018).  Didlake does not dispute that the first two factors are met; it argues that Mr. Lewis has not alleged facts meeting the final two factors.  This court agrees.

First, Mr. Lewis offers no indication that he was meeting his employer's legitimate expectations when he was discharged in February 2024.  His termination letter, attached to the complaint, states that he "failed to meet the expectations established in Policy 1020-Standards of Conduct for Employees and Policy 1025-Workplace Violence."  (ECF No. 3-1, at 5).  His actions in threatening his coworkers were violations of those policies and led to his termination.  (*Id.*).  Given his failure to abide by their policies, and no suggestion that these policies were unfair or unreasonable, Mr. Lewis does not allege that he was meeting his employer's legitimate expectations at the time he was discharged.  *See Burnett v. BJ's Wholesale Club*, 722 F.Supp.3d 566, 576 (D.Md. 2024).

Second, none of the facts pleaded give rise to a reasonable inference of unlawful discrimination.  Mr. Lewis worked for Didlake for six years and his employer was aware of his disability when they hired him.  (ECF No. 3-1, at 3).  Plaintiff does not argue,

13

at any point in his complaint, that Didlake fired him for his disability. Rather, Plaintiff alleges he was "wrongfully terminated after responding to workplace bullying." (*Id*.). While Plaintiff alleges that the "workplace bullying" was related to his disability, he does not allege that his *termination* was related to his disability; Didlake fired Mr. Lewis for threatening his coworkers in response, which was in violation of their workplace policies. (*Id*. at 5). Mr. Lewis has not stated a claim for wrongful termination under the ADA.[3]

**B.   Intentional Infliction of Emotional Distress**

In his complaint, Plaintiff asserts a legal claim for "Emotional Distress," which the court will construe as a tort claim for intentional infliction of emotional distress ("IIED"). The complaint alleges that "[s]ince his termination, [Mr. Lewis] has suffered extreme emotional distress, depression, and financial hardship." (ECF No. 3-1, at 3). As with his ADA claims, Mr. Lewis has not pleaded sufficient facts to survive a motion to dismiss.

To bring an IIED claim under Maryland law, Plaintiff must prove "(1) intentional or reckless conduct (2) that is extreme or outrageous (3) and caused (4) the plaintiff's severe emotional

---

[3] These facts also demonstrate that Didlake had a legitimate, non-discriminatory reason for terminating Plaintiff. *See, Curry v. Sw. Airlines Co.*, 25-cv-01468-SAG, 2025 WL 3062600, at *5 (D.Md. Nov. 3, 2025).

14

distress." *Nicholson v. Balt. Police Dep't*, No. 20-cv-3146-DKC, 2023 WL 4549741, at *10 (D.Md. July 14, 2023) (citing *Caldor, Inc. v. Bowden*, 330 Md. 632, 641-42 (1993)).  There is a high bar; "[l]iability accrues only 'for conduct exceeding all bounds usually tolerated by decent society, of a nature which is especially calculated to cause, and does cause, mental distress of a very serious kind.'"  *McPherson v. Balt. Police Dep't*, 494 F.Supp.3d 269, 286 (D.Md. 2020) (quoting *Ky. Fried Chicken Nat'l Mgmt. Co. v. Weathersby*, 326 Md. 663, 670 (1992)).

Even assuming (without deciding) that Plaintiff has suffered severe emotional distress following his termination, Plaintiff has not alleged any facts supporting a finding of "intentional or reckless conduct" that rises to the level of "extreme or outrageous."  *Nicholson*, 2023 WL 4549741, at *10.  Mr. Lewis was terminated after he failed to meet several workplace expectations. (ECF No. 3-1, at 5).  Firing an employee for cause, without more, does not rise to the level of "extreme or outrageous."  *See Preston v. Good Samaritan Hosp. of Md., Inc.*, No. 08-cv-2124-WDQ, 2008 WL 11509473, at *3 (D.Md. Sep. 18, 2008) (finding an employee failed to show extreme and outrageous conduct by her employer, partially because they fired her "for reasonable cause" after a "violation of workplace rules").  Mr. Lewis has not pleaded sufficient facts to state a claim for IIED.

15

### C. Motion to Amend the Complaint

At the end of Mr. Lewis' supplemental response to the motion to dismiss, he notes "[i]n the alternative, if the Court identifies any deficiencies in the Complaint, Plaintiff requests leave to amend." (ECF No. 39, at 4). Plaintiff does not indicate what changes he would like to make to his complaint, nor does he provide a copy of the proposed amended complaint as required by Local Rule 103.6. This is insufficient to constitute a motion to amend.

> Simply requesting leave to amend in a response in opposition to a motion to dismiss does not constitute a proper motion for leave to amend. *See Cozzarelli v. Inspire Pharms. Inc.*, 549 F.3d 618, 630–31 (4th Cir. 2008) (finding that a motion for leave to amend was "never properly made" where the plaintiffs "requested leave to amend only in a footnote of their response to defendants' motion for leave to amend, and again in the final sentence of their objections to the recommendation of the magistrate judge" and did not provide a proposed amended complaint to the district court); *see also U.S. ex rel. Williams v. Martin-Baker Aircraft Co.*, 389 F.3d 1251, 1259 (D.C. Cir. 2004) ("While Federal Rule 15(a) provides that leave to amend shall be freely given when justice so requires, a bare request in an opposition to dismiss—without any indication of the particular grounds on which amendment is sought—does not constitute a motion within the contemplation of Rule 15(a)." citation omitted)). This holds true even under the relaxed pleading standards applied to *pro se* plaintiffs. *Osei v. Univ. of Md. Univ. Coll.*, [No. 15-cv-2502-DKC], 2018 WL 2117927, at *3 (D.Md. May 8, 2018) ("[W]here . . . the [pro se] plaintiff fails to formally move to amend and fails to provide the district court with any proposed amended

16

>     complaint or other indication of the
>     amendments he wishes to make, 'the district
>     court [does] not abuse its discretion' in
>     denying a motion to amend the complaint."
>     (omission in original) (quoting *Estrella v.
>     Wells Fargo Bank, N.A.*, 497 F.App'x. 361, 362
>     (4th Cir. 2012))).

*Harris v. Hogan*, 21-cv-0298-BAH, 2024 WL 1580186, at *6 (D.Md. Apr. 11, 2024). Plaintiff has provided no information about what factual allegations could be added to the complaint to address its deficiencies. Without more, the court is unable to assess if amendment is appropriate under Fed.R.Civ.P. 15. The court will deny leave to amend.

## IV. Conclusion

For the foregoing reasons, Defendant's motion to dismiss will be granted. A separate order will follow.

/s/
DEBORAH K. CHASANOW
United States District Judge

17